Filed 8/14/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GRANT PARK NEIGHBORHOOD ASSOCIATION ADVOCATES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DEPARTMENT OF PUBLIC HEALTH et al., <br><br> Defendants and Respondents; <br><br> HARM REDUCTION COALITION OF SANTA CRUZ COUNTY, <br><br> Real Party in Interest and Respondent. | C095659 <br><br> (Super. Ct. No. 34-2020-80003551-CU-WM-GDS) |

     APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge. Reversed.

     Brereton, Mohamed & Terrazas, David J. Terrazas, Gabrielle J. Korte and Aaron J. Mohamed for Plaintiffs and Appellants.

Jason M. Heath, County Counsel (Santa Cruz), John B. Nguyen, Anthony N. Corso, Assistant County Counsel, and Brad Stephens, County Counsel (Butte), for Counties as Amici Curiae on behalf of Plaintiffs and Appellants.

Atchison, Barisone & Condotti and Anthony P. Condotti, City Attorney (Santa Cruz); Logan & Powell and Kirsten Powell, City Attorney (Scotts Valley); Burke, Williams & Sorensen and Samantha Zutler, City Attorney (Watsonville); Jones & Mayer and James R. Touchstone for City of Santa Cruz, City of Scotts Valley, City of Watsonville, California Police Chiefs Association, California State Sheriffs' Association, California Peace Officers' Association and League of California Cities as Amici Curiae on behalf of Plaintiffs and Appellants.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Kirin K. Gill and Matthew J. Goldman, Deputy Attorneys General, for Defendants and Respondents.

Law Office of Babak Naficy and Babak Naficy for Real Party and Interest and Respondent.

Under Health and Safety Code section 121349 (section 121349), the State Department of Public Health (the Department) may authorize an entity to distribute clean needles and syringes to those who inject drugs intravenously. The statute's aim is to prevent the spread of blood-borne viruses, like HIV, from the sharing of used needles. Before authorizing an entity under this statute, the Department must follow certain procedures to allow local officials and communities to provide input. These procedures include consulting with the leaders of local law enforcement with jurisdiction over the entity's proposed operating area, providing a period of public comment, and notifying local law enforcement when the comment period starts.

In this case, Grant Park Neighborhood Association Advocates and four individuals (together, Grant Park) challenge the Department's approval of an entity's application to operate a needle and syringe distribution program in Santa Cruz County. Grant Park argues the Department's approval was flawed for four reasons. First, it contends the

2

Department failed to consult with local law enforcement before approving the application. Second, it asserts the Department failed to notify three of the affected local law enforcement agencies about the comment period. Third, it contends the Department provided only 45 days for public comment even though its regulations at the time required 90 days. And fourth, it argues the Department failed to conduct the environmental review required under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). Although, after Grant Park filed suit, the Legislature amended section 121349 to exempt approvals under the statute from CEQA, Grant Park contends this amendment does not apply retroactively.

On Grant Park's appeal from the trial court's decision in the Department's favor, we find the Department failed to engage in the required consultation, failed to provide the required notice to three local police departments about the comment period, and failed to provide the required 90 days for comment. We also find these failures to comply with section 121349 prejudicial. But we find it unnecessary to consider Grant Park's final claim premised on CEQA, for the only relief it currently seeks under CEQA is relief we already agree is appropriate because of the Department's failures to comply with section 121349. We will direct the trial court to grant Grant Park's petition.

BACKGROUND

I

*Legal Background*

In 2005, the Legislature enacted section 121349 to authorize cities and counties to operate needle and syringe exchange programs. (Stats. 2005, ch. 692, § 3.) It did so based on "[s]tudies indicat[ing] that the lack of sterile needles available on the streets, and the existence of laws restricting needle availability[,] promote needle sharing, and consequently the spread of HIV among injection drug users." (Stats. 2005, ch. 692, § 1.) The Legislature believed better access to clean needles and syringes would "reduce the

3

spread of HIV infection and blood-borne hepatitis among the intravenous drug user population within California." (Stats. 2005, ch. 692, § 3.)

In 2011, the Legislature amended section 121349 to further expand access to clean needles and syringes. Under the law as amended in 2011, and still today, the Department can "authorize entities . . . to provide hypodermic needle and syringe exchange services . . . in any location where the department determines that the conditions exist for the rapid spread of HIV, viral hepatitis, or any other potentially deadly or disabling infections that are spread through the sharing of used hypodermic needles and syringes." (§ 121349, subd. (c), as amended by Stats. 2011, ch. 744, § 1, eff. Jan. 1, 2012.) But before authorizing a needle and syringe exchange program, the Department must ensure that the entity meets certain criteria, including that the entity has adequate funding to provide needle and syringe exchange services, has a plan to evaluate program impact, and can provide or refer participants to drug abuse treatment services. (§ 121349, subd. (d).)

The Department also must follow certain procedures before approving a proposed program. As relevant here, it may authorize a program only "after consultation with the local health officer and local law enforcement leadership, and after a period of public comment"—which until 2021, was a period of 90 days under the Department's regulations. (§ 121349, subd. (c); former Cal. Code Regs., tit. 17, §§ 7000, subd. (a)(22), 7002, subd. (b).) As part of the comment process, the Department must "[s]end a written and an email notice to the chief of police, the sheriff, or both, as appropriate, of the jurisdictions in which the program will operate." (§ 121349, subd. (e).) Following consultation and public comment, the Department "shall balance the concerns of law enforcement with the public health benefits" in deciding whether to approve the program. (*Id.*, subd. (c).)

4

## II

### *Approval of the Coalition's Application*

In early 2019, the Harm Reduction Coalition of Santa Cruz County (the Coalition) filed an application to operate a needle and syringe exchange program in Santa Cruz County. It acknowledged the county already operated its own needle and syringe exchange program, but it believed an additional program would better serve the community. The Department afterward found the application provisionally appropriate and initiated a period for public comment. Five law enforcement agencies in Santa Cruz County—namely, the Santa Cruz County Sheriff and the police departments for the cities of Santa Cruz, Scotts Valley, Watsonville, and Capitola—opposed the application. After the close of public comment, the Coalition e-mailed the Department that it would like to withdraw and resubmit its application "to out maneuver the hateful mob."

In late 2019, the Coalition filed a new application to operate a needle and syringe exchange program in Santa Cruz County. Under the proposed program, the Coalition would operate a mobile service location one day per week in Santa Cruz City and deliver clean needles and syringes to drug users' homes throughout Santa Cruz County. The Department again found the Coalition's application provisionally appropriate and initiated a period for public comment. In its public notice announcing the comment period, the Department represented "local law enforcement . . . were notified regarding the initiation of the public comment period."

Five days after purportedly notifying local law enforcement agencies, the Department notified two local law enforcement heads—the Santa Cruz County Sheriff and the Santa Cruz City Police Chief—about the Coalition's application. Both opposed the application. The city police chief agreed that harm reduction strategies "make[] sense from a public health, public finance and community safety policy perspective." But he expressed concern about syringe litter and said, to have his support, a volunteer syringe distribution program must have local oversight and accountability, a plan to reduce

5

discarded needles, and a means of ensuring the effectiveness of reducing infection rates and drug overdoses. The county sheriff expressed similar concerns about the lack of oversight and increased syringe litter. He also, among other things, found the county's existing syringe exchange program "robust" and noted concerns about the Coalition distributing syringes in local parks.

The Department never notified the three remaining city police departments in the county—that is, those for the cities of Scotts Valley, Watsonville, and Capitola. But two of these departments—the Watsonville and Capitola Police Departments—still submitted written comments. The Watsonville City Police Chief raised various concerns, including concerns about syringe litter, the lack of community outreach, and the accuracy of the facts cited in the Coalition's application. The Capitola City Police Chief raised additional concerns, including that the Coalition's operations would decrease the number of addicts using the County's syringe services and consequently deprive these addicts from receiving medical services and exposure to rehabilitation opportunities.

The Department ended the period for public comment after just 45 days, rather than the then-required 90 days. Several months later, in 2020, it approved the Coalition's application with certain amendments and a clarification that no services could be provided in recreational parks in Santa Cruz County. The Department's amendments, among other things, required the Coalition to follow the Department's guidelines, to provide personal sharps containers to participants, and to conduct syringe litter cleanup at least once per week. Although the Department appears to have generally considered local law enforcement's comments before the approval, it never engaged with them directly about their concerns. It also found some of their concerns did not even deserve any mention in its responses to public comments. In internal comments about the Santa Cruz City Police Chief's expressed concerns, Department staff wrote: "No need to respond. [The Coalition's] procedure will never be 'thoughtful' enough for this imbecile. Don't give his statement power."

6

## III

### *Grant Park's Suit*

Following the Department's approval, Grant Park filed a petition for writ of mandate challenging the approval. It named as parties the Department and two of its officials (together, the Department) and the Coalition and its founder (together, the Coalition). Grant Park alleged the approval should be set aside for four reasons relevant here. First, it argued the Department failed to comply with CEQA. Second, it contended the Department failed to provide 90 days for public comment, as required in its regulations. Third, it asserted the Department failed to notify the police chiefs of Scotts Valley, Watsonville, and Capitola about the Coalition's application. And fourth, it contended the Department failed to consult with local law enforcement.

In a tentative ruling, the trial court largely agreed with Grant Park. It found the Department wrongly treated its decision as exempt from CEQA, failed to provide the required 90 days for comment, and failed to notify all local law enforcement about the Coalition's application. It rejected, however, Grant Park's argument that the Department failed to consult with local law enforcement, noting that the Department considered and attempted to address and balance at least some of the concerns of law enforcement. Based on these findings, the court tentatively granted Grant Park's petition.

But shortly after, the court asked for supplemental briefing following recent changes in the law. A few days after the court's tentative decision, the Governor signed a bill amending section 121349 to make approvals under the statute exempt from CEQA. (§ 121349, subd. (h), as amended by Stats. 2021, ch. 480, § 1, eff. Jan. 1, 2022.) The same day, the Department amended its regulations to shorten the required comment period from 90 days to 45 days.

Considering these changes in the law, the court changed course in its final ruling. It found the amendment to section 121349 mooted Grant Park's CEQA claim. It similarly found the amendment to the Department's regulations "arguably" mooted Grant

7

Park's claim based on the shortened comment period and, alternatively, found requiring the Department to provide additional time for comment would merely delay the inevitable. It found the lack of notice to the Scotts Valley, Watsonville, and Capitola Police Departments was not prejudicial, because all three still had actual notice of the comment period and Grant Park admitted all three participated in the comment process.[1] And lastly, as in its tentative decision, it found the Department satisfied section 121349's requirement for consulting with local law enforcement. The court thus denied Grant Park's petition. Grant Park timely appealed.

DISCUSSION

I

*Standard of Review*

In this action, we review the actions of the Department. "In ordinary mandamus actions under Code of Civil Procedure section 1085, when reviewing the exercise of discretion, ' "[t]he scope of review is limited, out of deference to the agency's authority and presumed expertise: 'The court may not reweigh the evidence or substitute its judgment for that of the agency. [Citation.]' " [Citation.] "In general . . . the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support. . . ." [Citations.]' Because both the trial court and the appellate court apply the same standard of review, on appeal we review the agency's action de novo." (*Polster v. Sacramento County Office of Education* (2009) 180 Cal.App.4th 649, 668.)

---

[1] As we explain *post*, Grant Park incorrectly argued below that all three police departments submitted comments, but it was the Scotts Valley City Council, not the Scotts Valley Police Department, that participated in the comment process.

8

## II

### *Consultation*

We start with Grant Park's contention that the Department violated section 121349's consultation requirement. It reasons that, under this requirement, the Department needed to engage in a back-and-forth interactive process with local law enforcement agencies, not merely solicit and consider comments from these agencies. Several amici curiae—namely, Santa Cruz County, Santa Cruz City, Scotts Valley City, Watsonville City, the California Police Chiefs Association, the California State Sheriffs' Association, the California Peace Officers' Association, and the League of California Cities—argue the same. We agree.

Under section 121349, again, the Department may authorize an entity to provide needle and syringe exchange services in any location found to have conditions that could lead to the rapid spread of blood-borne viruses through the sharing of used needles and syringes. (§ 121349, subd. (c).) But the Department must follow certain procedures before doing so. As relevant here, it may grant authorization only "after consultation with the local health officer and local law enforcement leadership, and after a period of public comment. . . ." (*Ibid*.) It also, as part of the public comment process on applications it provisionally deems appropriate, must "[s]end a written and an email notice to the chief of police, the sheriff, or both, as appropriate, of the jurisdictions in which the program will operate." (*Id.*, subd. (e)(3).)

Both sides in this appeal offer different takes on the meaning of the term "consultation." According to the Department, the term simply requires it to give "due consideration" to local law enforcement's comments. It cites in support a dictionary defining the term "consult" to mean, among other things, "to ask the advice or opinion of." (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/consult> [as of Aug. 14, 2023], archived at: <https://perma.cc/V58L-YKVV>.) The Coalition construes the term similarly.

9

According to Grant Park, however, the consultation requirement obligates the Department "to actually *interact* with local law enforcement," not merely consider law enforcement's comments. It then offers its own competing dictionary definition, noting the term "consultation" has been defined to mean, among other things, "[a] conference in which the parties consult and deliberate; a meeting for deliberation or discussion." (Oxford English Dict. Online (2023) <https://www.oed.com/view/Entry/39957?redirectedFrom=consultation#eid> [as of Aug. 14, 2023], archived at: <https://perma.cc/WKV9-YPHZ>.)

We find Grant Park has the better reading of section 121349. Starting with the statutory text, we find the Department's and the Coalition's reading inconsistent with basic principles of statutory construction. Section 121349, again, requires both consultation with local law enforcement and a period of public comment. But under the Department's and Coalition's reading, these two distinct requirements would collapse into one—public comment. That is because, under their view, the Department satisfies section 121349 so long as it considers local law enforcement's comments. But that interpretation effectively writes the distinct consultation requirement out of the statute. Adopting their interpretation, then, "would be inconsistent with the well-established principle that courts should, if possible, give meaning to every word of a statute and avoid constructions that make any word surplusage." (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 13.)

Grant Park's reading, on the other hand, avoids this problem. It gives life to every word in the statute and reasonably construes the term "consultation" to mean a "deliberation of two or more persons on some matter." (Webster's Third New Internat. Dict. (1993) p. 490 [also defining consultation to mean "a council or conference (as between two or more persons) usu. to consider a special matter"].) This reading, consistent with the statutory text, treats the consultation language and the public comment language as establishing two distinct requirements. The latter requires the

Department to establish a period for public comment and, beforehand, to notify "the chief of police, the sheriff, or both, as appropriate, of the jurisdictions in which the program will operate." (§ 121349, subds. (c), (e)(3).) The former requires the Department to consult—that is, to deliberate—"with the local health officer and local law enforcement leadership." (*Id.*, subd. (c).) Under this reading, the Department need not ultimately follow local law enforcement's recommendations during consultation. (*Ibid.*) But it at least must deliberate with local law enforcement about their concerns and take their concerns into account.

The legislative history is consistent with our reading. The relevant text of section 121349 was added in a 2011 bill. Under an early version of the bill, the Department needed, as it does now, to provide for a period of public comment before approving an application to provide needle and syringe exchange services. (Sen. Amend. to Assem. Bill No. 604 (2011-2012 Reg. Sess.) Aug. 22, 2011.) But it had no need to consult with anyone. In the final version of the bill, however, the Department was required to do more than allow for public comment; it also needed to consult with the local health officer and local law enforcement leadership. (§ 121349, subd. (c), as amended by Stats. 2011, ch. 744, § 1, eff. Jan. 1, 2012.) That the Legislature added this consultation requirement after the public comment requirement was already in place makes plain that it did not perceive the public comment requirement as already sufficient to safeguard local interests.

Case law is also consistent with our reading. Consider, for instance, *California Wilderness Coalition v. U.S. Dept. of Energy* (9th Cir. 2011) 631 F.3d 1072 (*California Wilderness Coalition*)—a case that all parties discuss in detail. The Ninth Circuit there considered a statute that required a federal agency to conduct a study " 'in consultation with affected States' " and then, based on this study, to issue a report after " 'an opportunity for comment from affected States.' " (*Id.* at p. 1085.) Taking an approach similar to the Department here, the federal agency asserted "it had the discretion to determine what 'consultation' required" and "met its obligation by inviting comments

11

from the public (including the affected States) while it was preparing the [study]." (*Id.* at p. 1086.) But the Ninth Circuit disagreed. It found Congress's use of the distinct terms "consultation" and "comment" showed "that Congress intended consultation to be more than responding to comments"—namely, it intended "an exchange of information and opinions." (*Id.* at pp. 1087, 1093.) The court added that a contrary reading would render part of the statute superfluous, be inconsistent with the statute's purpose of allowing states to participate in preparing the study, and be inconsistent with case law construing the term "consult." (*Id.* at pp. 1087-1088.)

The court in *United States Steel Corp. v. U.S.* (Ct.Internat.Trade 2005) 362 F.Supp.2d 1336—one of the cases the *California Wilderness Coalition* court discussed— found similarly. The court there considered a statute that restricted a federal agency's ability to suspend certain types of investigations, requiring the agency, before suspending an investigation, to consult with the parties that petitioned for the investigation and to allow interested parties to submit comments. (*Id.* at p. 1342.) In the federal agency's telling, this statute simply required the agency to solicit and receive comments from those that petitioned for the investigation. (*Id.* at p. 1343.) But the court disagreed. It wrote: "Throughout this action, the Government has persisted in conflating [the agency's] notice-and-comment obligations with its consultation obligations. . . . However, the statute is clear: [The agency's] consultation obligations are separate and distinct from (albeit related to) its notice-and-comment obligations." (*Ibid.*, fn. 14; see also *HIAS, Inc. v. Trump* (4th Cir. 2021) 985 F.3d 309, 320-321 [after noting the "ordinary meaning of the term 'consult' is to seek an opinion or advice, or to deliberate," the court indicated it favored the latter meaning because the statutory structure "strongly suggests that Congress intended for the consultation requirement to involve a dialogue facilitating an exchange of opinions among the affected parties"].)

12

Considering section 121349's text and structure, the statute's legislative history, and case law construing similar statutes, we interpret section 121349's consultation requirement to require a period of back-and-forth deliberation with local law enforcement. Under this requirement, then, the Department needed to deliberate with all local law enforcement agencies in Santa Cruz County, including the Santa Cruz County Sheriff and the police departments for the cities of Santa Cruz, Scotts Valley, Watsonville, and Capitola. But the Department never contacted three of these agencies. And although it sought comments from two—the Santa Cruz County Sheriff and the Santa Cruz Police Department—it engaged with neither. It also found some of their concerns did not even deserve any mention in its responses to public comments, with its staff writing, in internal comments, that there was "[n]o need to respond" to part of the Santa Cruz City Police Chief's expressed concerns and that the Coalition's "procedure will never be 'thoughtful' enough for this imbecile." That is not the consultation required under section 121349. Whatever discretion the Department may have in determining when the consultation requirement is satisfied under section 121349, subdivision (c), it cannot skip this step altogether and simply relegate law enforcement leaders to participating in the public comment period.

The Department's violation of section 121349's consultation requirement, moreover, was prejudicial. Its failure to engage with any of the local law enforcement agencies, and even to contact three of these agencies, prevented the interactive process that the Legislature intended in section 121349. That failure makes it impossible to know what effect this interactive process would have had on the Department's balancing of law enforcement concerns with public health benefits under the statute. Under these circumstances, we cannot say the Department's violation of section 121349 was harmless, particularly since, were we to do so, we would render the statute's consultation requirement a nullity. (See *California Wilderness Coalition, supra*, 631 F.3d at p. 1093 [finding prejudicial a federal agency's failure to consult and noting "the nature of

13

consultation makes it difficult to determine the precise consequences of its absence"]; cf. *Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1019, 1021 [finding prejudicial a city's conduct that prevented state agencies from submitting timely comments on a CEQA project; although the city received similar comments from others, "it was impossible . . . to know what effect these expert criticisms would have had on public comments, presentations and official reaction"]; *Fall River Wild Trout Foundation v. County of Shasta* (1999) 70 Cal.App.4th 482, 493 [finding similarly when a county failed to reach out to an agency with subject matter expertise].)

Although both the Department and the Coalition favor a different reading of section 121349, we find none of their arguments persuasive. Both, to start, try to distinguish *California Wilderness Coalition*. They argue the case is distinguishable because the statute there used somewhat different language than that here. But while true these two statutes are not identical, respondents miss the Ninth Circuit's point in *California Wilderness Coalition*. The court there, again, focused on the statute's distinct language for "consultation" and "comment" in its holding, reasoning that this "juxtaposition . . . indicates that Congress intended consultation to be more than responding to comments." (*California Wilderness Coalition, supra*, 631 F.3d at p. 1087.) That same juxtaposition is present here. And so while section 121349 may be phrased somewhat differently than the statute in *California Wilderness Coalition*, it is similar in the way that matters—it has distinct language for consultation and comment, evidencing distinct requirements for consultation and comment.

The Coalition also cites a case it believes more on point—*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603 (*California Native Plant Society*). In that case, our court considered a provision in a city's general plan that required it to consult with a state agency when making certain decisions about plant and animal habitats. (*Id.* at p. 635.) Starting with the principle that a city enjoys a high degree of deference in interpreting its own general plan, we found the city reasonably

14

concluded that soliciting and considering comments from the state agency was good enough. (*Id.* at pp. 638-639.) After all, we explained, one of the meanings of the word " 'consult' " is simply " 'to ask the advice or opinion of.' " (*Id.* at p. 639.) In the Coalition's telling, this "analysis and holding is directly on point here and controlling," including the discussion of deference.

The Coalition, however, fails to appreciate several important differences in that case. First, while a city has " ' "unique competence to interpret [its] policies" ' " when approving a project and is entitled to a high degree of deference (*Orange Citizens for Parks & Recreation v. Superior Court* (2016) 2 Cal.5th 141, 155), a state agency interpreting a statute is not entitled to the same amount of deference (see *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 236 ["[e]ven in substantive areas of the agency's expertise, . . . our deference to an agency's statutory interpretation is limited"]). Second, and more importantly, the text of section 121349—which includes both a consultation requirement and a public comment requirement—is not comparable to the text of the general plan in *California Native Plant Society*—which included no comment requirement at all. (*California Native Plant Society, supra*, 172 Cal.App.4th at p. 635.) Again, the structure of section 121349 matters, and it shows that consultation must mean something more than merely providing an opportunity to comment.

To the extent *California Native Plant Society* is comparable, moreover, it tends to favor Grant Park. The general plan there, as covered, required the city to consult with a state agency on certain matters. It also required the city to coordinate with the state agency on related matters. (*California Native Plant Society, supra*, 172 Cal.App.4th at p. 635.) In part because the general plan used these distinct words, the court concluded that "the City intended 'coordination' to have a different meaning than 'consultation' "— otherwise it could have just used the word "consultation." (*Id.* at p. 641.) Even the Coalition's preferred case, then, favors Grant Park's position and shows a provision's

15

terms must be construed in the context of the provision as a whole, not in isolation. (See *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673 [courts must " ' " 'consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose' " ' " ].)

The Department also raises the topic of deference, though, unlike the Coalition, it does not claim it is entitled to the same degree of deference as a city interpreting its own policies. It instead simply contends it has "broad discretion" to construe the term "consultation" and suggests we should defer to its preferred reading. But like the Coalition, the Department overstates the deference it is due. "An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) But in the end, courts still must "independently judge the text of the statute," even when "taking into account and respecting the agency's interpretation of its meaning." (*Ibid*.) "Depending on the context, [the agency's interpretation] may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Id.* at pp. 7-8.) Here, we find the last of these descriptions best describes the Department's interpretation here. For the reasons already covered, its interpretation is inconsistent with the statutory text and structure, inconsistent with the legislative history, and inconsistent with existing case law.

Lastly, in an argument directed toward all Grant Park's claims, the Coalition asserts Grant Park's claims are moot because the Department's 2020 approval of the Coalition's program expired on August 7, 2022. It reasons that in these circumstances no court could provide Grant Park effective relief. We find differently. As the Coalition concedes, the Department, relying on the initial 2020 approval, has since reauthorized the Coalition's program for another two years until August 7, 2024. It did so under section 121349, subdivision (c), which allows the Department to authorize a program for up to two years and then "reauthorize the program in consultation with the local health officer

16

and local law enforcement leadership."  Under these circumstances, our finding that the Department's initial approval was inappropriate, which would undermine the basis for the later reauthorization, could still provide Grant Park with effective relief.  (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495 [party could challenge restraining order that expired but has since been renewed].)

III

*Public Comment*

We consider next Grant Park's contention that the Department violated section 121349's requirements for public comment.  Grant Park raises two points on this topic.  First, it argues the Department failed to notify three local police departments about the comment period.  Second, it contends the Department wrongly ended the comment period at 45 days, even though its regulations at the time guaranteed a comment period of 90 days.  We agree with both contentions.

We begin with the Department's failure to notify three local police departments about the comment period.  Section 121349, subdivision (e) describes the process for public comment.  It states: "If the application is provisionally deemed appropriate by the department, the department shall, at least 45 days prior to approval of the application, provide for a period of public comment as follows:  [¶]  (1) Post on the department's internet website the name of the applicant, the nature of the services, and the location where the applying entity will provide the services.  [¶]  (2) Send a written and an email notice to the local health officer of the affected jurisdiction.  [¶]  (3) Send a written and an email notice to the chief of police, the sheriff, or both, as appropriate, of the jurisdictions in which the program will operate." (§ 121349, subd. (e).)  Our focus here is on the last of these requirements.  Before approving the Coalition's application, the Department contacted two law enforcement agencies in Santa Cruz County—the Santa Cruz County Sheriff and the Santa Cruz Police Department.  But it only contacted these agencies five days after it started the comment period and after it told the public that local

17

law enforcement had already been contacted. It also, more relevant to Grant Park's argument, never contacted the remaining three city police departments in the county—namely, the Scotts Valley, Watsonville, and Capitola Police Departments. None of these police departments thus received the required notice under section 121349.

We turn next to the Department's failure to provide a 90-day comment period. At the time the Department considered the Coalition's application, and still today, section 121349 required the Department to provide for a period of public comment "*at least* 45 days prior to approval of the application." (§ 121349, subd. (e), italics added, as amended by Stats. 2018, ch. 34, § 13, eff. June 27, 2018.) But the Department's regulations at the time of the application required more than the minimum period required in the statute. They required a 90-day period for public comment. (Former Cal. Code Regs., tit. 17, §§ 7000, subd. (a)(22) [" 'Public Comment Period' means a 90-day period"], 7002, subd. (b) ["The public may comment online about an application during the 90-day public comment period"].) And so, as required under these then-governing regulations, the Department should have provided the public 90 days to comment on the Coalition's application. Instead, it allowed only half this time—45 days.

Because the Department both ended the comment period 45 days early and failed to notify three city police departments about the comment period, we find it violated section 121349's requirements for public comment—something that neither the Department nor the Coalition dispute on appeal. We also find these violations collectively prejudicial. The record suggests that the Department's conduct prevented at least one law enforcement agency, the Scotts Valley Police Department, from commenting on the Coalition's application here. That department's police chief commented on the Coalition's first application, voicing his "strong opposition to the application" and noting the reasons for his opposition. But the Department never notified him about the Coalition's second application, and, lacking fair notice of the application, he never submitted a comment on this application. The general public too—which had

18

reason to expect an additional 45 days to comment—also lacked a fair opportunity to comment on the Coalition's second application. And considering the high public interest in the Coalition's application—with nearly 700 comments submitted—it is not plausible that the Department's failure to provide these 45 days of public comment was harmless. (Cf. *Joy Road Area Forest & Watershed Assn. v. California Dept. of Forestry & Fire Protection* (2006) 142 Cal.App.4th 656, 673 ["the significant public interest in this case is a strong indication that the failure to comply with CEQA's notice and recirculation requirements was prejudicial"].)

Although the Department and the Coalition contend the Department's violations are either moot or not prejudicial, we find differently. Starting with prejudice, they argue the Department's failure to notify the Scotts Valley, Watsonville, and Capitola Police Departments was not prejudicial, because all three police departments still had actual notice of the comment period and even submitted comment letters. But while we accept these police departments eventually had notice of the comment period after several members of the public shared courtesy copies of their comments, they only received this notice well after the comment period had already begun. And while two of the three police departments—the Watsonville and Capitola Police Departments—ultimately submitted comments, the Scotts Valley Police Department submitted nothing on the application here. In claiming otherwise, the Department and the Coalition appear to have confused the Scotts Valley City Council—which did submit a comment letter—with the Scotts Valley Police Department—which did not. Grant Park appears to have made the same mistake at the trial court level, alleging that all three police departments submitted comments, though it has corrected its factual error on appeal.

Turning to mootness, the Department and the Coalition argue the Department's failure to provide the required 90 days for comment is moot because, after Grant Park filed suit, the Department amended its regulations to require a comment period of only 45 days. (Cal. Code Regs., tit. 17, §§ 7000, subd. (a)(22), 7002, subd. (b).) They reason that

19

Grant Park and others already received the full 45-day comment period required in the current regulations. They add that remanding the matter to require an additional 45-day comment period would only delay the inevitable.

We find neither argument persuasive. Telling the public they have 90 days to comment but then, at day 45, saying the rules have changed and the comment period is over, is not the same as telling the public up front they have only 45 days to comment. In the former scenario, members of the public may be excluded from the administrative process simply because they took the government at its word. Not so in the latter scenario. That distinction is important. And to the extent members of the public were excluded from participating here because they reasonably anticipated having more time to comment based on the Department's regulations, remanding this matter to the Department to provide a new comment period would provide effective relief. Remanding in these circumstances, moreover, cannot be said to merely delay the inevitable, for we cannot simply presume the Department has already made up its mind and will not be moved by any further comments.

IV

*CEQA*

Lastly, we consider Grant Park's assertion that the Department violated CEQA.

CEQA serves "to ensure that public agencies will consider the environmental consequences of discretionary projects they propose to carry out or approve." (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 488.) To that end, absent an exemption, an agency proposing to carry out or approve a project generally must conduct an initial study to determine "if the project may have a significant effect on the environment." (Cal. Code. Regs., tit. 14, § 15063, subd. (a).) Depending on the initial study's findings, the agency must then prepare either an environmental impact report, a mitigated negative declaration, or a negative declaration. (Pub. Resources Code,

20

§§ 21100, 21151; Cal. Code. Regs., tit. 14, §§ 15063, subd. (b)(2), 15070, subd. (b), 15371.)

In this case, Grant Park contends the Department—which treated its approval as exempt from CEQA—violated CEQA requirements in place at the time it approved the Coalition's application in 2020.  Although Grant Park acknowledges the Legislature later amended the law in 2021 to make authorizations under section 121349 exempt from CEQA (§ 121349, subd. (h), as amended by Stats. 2021, ch. 480, § 1, eff. Jan. 1, 2022), it contends this amendment was not in effect at the time of the trial court's ruling and, in any event, it does not apply retroactively.  It then asserts it is "still entitled to the remedy [it] seek[s], which is the rescission of the authorization, with a new public comment period and actual local law enforcement consultation, and declaratory and injunctive relief" requiring full compliance "with the Health and Safety Code and its implementing regulations."  Respondents, in response, assert that the 2021 amendment renders the issue moot and that adopting Grant Park's approach would only waste resources.

We need not resolve the merits of the parties' dispute.  Although Grant Park seeks various remedies in this case, the remedies it currently seeks are remedies it is already entitled to receive because of the Department's violations of section 121349.  We need not, and will not, address whether CEQA provides a separate ground for providing some of this same relief.

DISPOSITION

The judgment is reversed.  On remand, the trial court is directed to vacate its judgment denying the petition for writ of mandate and to enter a new judgment granting

21

the petition.  Grant Park is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

 

/s/
_____
BOULWARE EURIE, J.

We concur:

/s/
_____
HULL, Acting P. J.

/s/
_____
KRAUSE, J.